Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| JUAN M. PONCE FANTAUZZI<br><br>RECURRENTE<br><br>v.<br><br>JUNTA DE DIRECTORES CONDOMINIO REINA DEL MAR<br><br>RECURRIDO | KLRA202500179 | *Revisión Judicial* procedente del Departamento De Asuntos Del Consumidor (DACO)<br><br>Querella Núm. C-SAN-2024-0019874<br><br>Sobre: Ley de Condominios (Ley Núm. 129 del 16 de agosto de 2020, según enmendada |

Panel integrado por su presidente, el Juez Pagán Ocasio, el Juez, Juez Rodríguez Flores y el Juez Adames Soto.

Pagán Ocasio, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de mayo de 2025.

**I.**

El 25 de marzo de 2025, Juan M. Ponce Fantauzzi (señor Ponce Fantauzzi o recurrente) presentó un *Recurso de revisión* en el que solicitó que revoquemos una *Resolución sumaria* emitida por el Departamento de Asuntos al Consumidor (DACO o foro recurrido) el 5 de febrero de 2025, notificada y archivada en autos ese mismo día.[2] En el dictamen, DACO declaró No Ha Lugar la *Querella* promovida por el recurrente en contra de la Junta de Directores y el Consejo de Titulares del Condominio Reina del Mar (Consejo de Titulares) (en conjunto, parte recurrida) por falta de jurisdicción y, consecuentemente, ordenó su cierre y archivo.

---

[1] Véase Orden Administrativa OATA-2025-42.
[2] Apéndice del *Recurso de revisión*, Exhibit 1, págs. 1-8.

Número Identificador
SEN2025_____

El 26 de marzo de 2025, emitimos una *Resolución* en la que concedimos a la parte recurrida hasta el 24 de abril de 2025 para que presentaran su alegado en oposición.

El 24 de abril de 2025, la parte recurrida presentó un *Alegato* en el que solicitó que confirmemos la *Resolución sumaria* emitida por DACO.

Contando con la comparecencia de ambas partes, damos por perfeccionado el recurso y, en adelante, pormenorizaremos los hechos procesales atinentes a la solicitud de revisión judicial.

**II.**

El caso de marras tuvo su génesis el 19 de agosto de 2024 cuando el señor Ponce Fantauzzi radicó una *Querella* ante DACO, C-SAN-2024-0019874, al amparo de la Ley de Condominios de Puerto Rico, Ley Núm. 129-2020 (Ley Núm. 129-2020), según enmendada, 31 LPRA sec. 1921 *et seq.*[3] Mediante ésta, indicó que el 1 de febrero de 2024 el Consejo de Titulares del Condominio Reina del Mar aprobó una transacción que representa el 50% de los daños reclamados por el huracán María. Mencionó que el 19 de julio de 2024 se celebró una asamblea extraordinaria para considerar y aprobar el plan de distribución de los fondos de la indemnización recibida. Según alegó, tenían que decidir la forma de distribuir los fondos recibidos únicamente entre dos alternativas y que ninguna de estas se ajustaba en derecho. Manifestó que no votó por entender que se estaba obligando al Consejo de Titulares a decidir entre dos alternativas de forma ilegal y a cambiar la decisión tomada en la asamblea del 1 de febrero de 2024. Por lo cual, solicitó al foro recurrido que declarara nula la asamblea extraordinaria celebrada el 19 de julio de 2024 y que se ordenara a que se hagan los pagos a los condómines conforme al 50% de los daños reclamados.

---

[3] Íd., Exhibit 4, págs. 17-31.

Posteriormente, el 26 de diciembre de 2024, el señor Ponce Fantauzzi radicó una *Querella enmendada* en la que esbozó los mismos argumentos que en la querella inicial y añadió que, para hacer la distribución que corresponde a cada condómino, es necesario usar la valoración de los daños hecha por el perito contratado por el condominio y multiplicarlo por el 34.6%.[4]

La parte recurrida presentó una *Contestación a querella enmendada* fechada el 16 de enero de 2025 en la que negó las alegaciones incoadas en su contra.[5] Alegó afirmativamente que el señor Ponce Fantauzzi no cumplió con los requisitos del Artículo 65 de la Ley Núm. 129-2020, *supra*. Arguyó que el señor Ponce Fantauzzi no votó en contra de los acuerdos adoptados por lo que no podía presentar la *Querella*. Por su parte, adujo que la Junta de Directores cumplió a cabalidad con los requisitos del Artículo 63 de la Ley Núm. 129-2020, *supra*.

Con la misma fecha, la parte recurrida presentó una *Moción en solicitud de resolución sumaria* en la que alegó que no existían hechos materiales que impidieran la resolución sumaria del caso a su favor.[6] Arguyó que el Consejo de Titulares cumplió cabalmente con los requisitos del Artículo 63 de la Ley Núm. 129-2020, *supra*. Expuso que, en cumplimiento con el precitado artículo, la Junta de Directores convocó a una asamblea extraordinaria para el 19 de julio de 2024 con el fin de considerar y aprobar el Plan de Distribución; que en dicha asamblea se aprobó por mayoría de votos el Plan de Distribución; y que aun cuando el señor Ponce Fantauzzi asistió, no votó en contra de la aprobación de dicho plan. Arguyó que el recurrente simplemente se inhibió, incumpliendo con el requisito del Artículo 65 de la Ley Núm. 129-2020, *supra,* de haber votado en

---

[4] Íd., Exhibit 6, págs. 35-63.
[5] Íd., Exhibit 7, págs. 64-67.
[6] Íd., Exhibit 8, págs. 68-77.

contra del acuerdo adoptado. Además, solicitó la imposición de honorarios de abogado a su favor.

Por su parte, el recurrente presentó una *Moción en oposición a sentencia sumaria* fechada el 27 de enero de 2025 en la que arguyó que estaba en controversia si el señor Ponce Fantauzzi podía impugnar el cómputo de la compensación a los titulares, presentado por la Junta de Directores, a pesar de que no votó cuando el Consejo de Titulares decidió distribuir los fondos entre los titulares.[7] Alegó que no estaba impugnado la decisión del Consejo de Titulares sino el error en el plan de distribución de fondos porque entiende que no está hecha conforme a derecho. Por esa razón, sostuvo que no estaba impedido de impugnar la distribución de fondos que la Junta de Directores presentó en la asamblea extraordinaria.

El 5 de febrero de 2025, DACO emitió una *Resolución sumaria* en la que declaró No Ha Lugar la *Querella* incoada por el recurrente por falta de falta de jurisdicción.[8] Asimismo, declaró sin lugar la solicitud de imposición de honorarios de abogado a favor de la parte recurrida.

Para fundamentar su dictamen formuló las siguientes determinaciones de hechos:

1. La parte querellante, Juan M. Ponce Fantauzzi es titular del Apartamento 11-D en el Condominio Reina del Mar, en virtud de la Escritura 37 sobre Individualización y Compraventa, otorgada el 21 de septiembre de 1972, en San Juan, Puerto Rico; ante el Notario Carlos Roberto Vélez.
2. El Condominio Reina del Mar está sometido al Régimen de Propiedad Horizontal.
3. El 3 de julio de 2024, la Junta de Directores del Condominio Reina del Mar citó al Consejo de Titulares a una asamblea extraordinaria a celebrarse el 19 de julio de 2024 para aprobar el Plan de Distribución de los fondos pagados por la indemnización de la aseguradora Triple S Propiedad por los daños ocasionados tras el paso del huracán María. Junto a la convocatoria de la asamblea extraordinaria se incluyó la propuesta del Plan de Distribución de referencia.

---

[7] Íd., Exhibit 9, págs. 78-84.
[8] Íd., Exhibit 1, págs. 1-8.

4. El 19 de julio de 2024, se celebró la asamblea extraordinaria y la parte querellante asistió a dicha asamblea.

5. Luego de una amplia discusión del Plan de Distribución, el Consejo de Titulares del Condominio Reina del Mar, con el voto mayoritario aprobó el mencionado plan.

6. La parte querellante no votó en contra de la aprobación del Plan de Distribución de Fondos.

7. Inconforme con la forma en que se computo la compensación para cada titular del Condominio, la parte querellante presentó la querella de epígrafe para solicitar como remedio que este Departamento declare nula la asamblea extraordinaria del 19 de julio de 2024, al igual que los acuerdos adoptados en dicha reunión, para que de esta forma se ordene que se hagan los pagos a los titulares del Condominio Reina del Mar conforme al 50% de los daños reclamados por estos en una demanda conforme lo acordado en una transacción adoptada en una asamblea celebrada el 1 de febrero de 2024.

8. El 16 de enero de 2025, la parte querellada presentó ante este Departamento una *Solicitud de Resolución Sumaria* aduciendo que a la parte querellante no le asiste derecho alguno para la presentación de la querella de epígrafe toda vez que, a pesar de haber asistido a la asamblea extraordinaria del 19 de julio de 2024, no votó en contra de la aprobación del Plan de Distribución de Fondos de referencia.

9. El 28 de enero de 2025, la parte querellante presentó ante este Departamento una *Moción en Oposición a Sentencia Sumaria*, en la que, entre varios asuntos, alegó en los hechos esenciales sobre los cuales no hay controversia sustancial que no votó en la asamblea del 19 de julio de 2024, cuando se atendió el asunto del Plan de Distribución en controversia.

El foro recurrido basó su determinación en que no había evidencia en el expediente administrativo que probara que el señor Ponce Fantauzzi votó en contra del acuerdo adoptado en la asamblea extraordinaria del 19 de julio de 2024 para aprobar el Plan de Distribución de fondos pagados por los daños ocasionados por el huracán María. Por lo cual, determinó que carecía de jurisdicción.

Inconforme, el 24 de febrero de 2025, el señor Ponce Fantauzzi presentó una *Moción de reconsideración* sobre la *Resolución sumaria* emitida por DACO el 5 de febrero de 2024, notificada y archivada en autos el mismo día.[9] Alegó que no impugnó la decisión tomada por el Consejo de Titulares sino la forma en que la Junta de Directores

---

[9] Íd., Exhibit 2, págs. 9-13B.

asignó una cantidad de dinero a cada apartamento. Por lo cual, adujo que cumplió con el Artículo 65 de la Ley Núm. 129-2020, *supra.*

El 26 de febrero de 2025, DACO emitió, notificó y archivo en autos una *Resolución en reconsideración* en la que declaró No Ha Lugar la moción de reconsideración presentada por el señor Ponce Fantauzzi.[10]

Insatisfecho, el 25 de marzo de 2025, el señor Ponce Fantauzzi presentó el *Recurso de revisión* de epígrafe en el que le imputó a DACO la comisión del siguiente error:

> **Erró DACO al concluir que la parte recurrente está impugnando una decisión del Consejo de Titulares tomada en la asamblea celebrada.**

El recurrente arguyó que su reclamo es una impugnación de las acciones u omisiones de la Junta de Directores al circular en la asamblea extraordinaria un plan de distribución por apartamento en el que no utilizaron el informe pericial de los daños sufridos por cada apartamento preparado por el perito contratado. Adujo que la Junta de Directores preparó un plan de distribución por apartamento fraudulenta y que beneficio a tres (3) de sus miembros. Además, sostuvo que no está violando el Artículo 65 de la Ley Núm. 129-2020, *supra,* porque la decisión del Consejo de Titulares nunca nació a la vida jurídica. Manifestó que no infringió el precitado artículo porque, aunque sí estuvo presente en la asamblea, al percatarse de la forma errónea y fraudulenta en que la Junta de Directores hizo la distribución de fondos, no votó en contra de ninguna decisión del Consejo de Titulares. Argumentó que, en la alternativa que DACO interpretara que se está impugnando una decisión del Consejo de Titulares, la misma es nula e inexistente por

---

[10] Íd., Exhibit 3, págs. 14-16.

el fraude cometido por la Junta de Directores al preparar la tabla de distribución por apartamento.

Por su parte, el 24 de marzo de 2025, la parte recurrida presentó un *Alegato* en el que arguyó que DACO emitió el dictamen correcto basado en los hechos incontrovertidos y en el derecho aplicable. Alegó que la referida asamblea extraordinaria se citó conforme lo exige el Artículo 63 de la Ley Núm. 12-2020, *supra,* y que allí el Consejo de Titulares aprobó por voto mayoritario de los presentes el Plan de Distribución que les presentó la Junta de Directores. Argumentó que, si el recurrente entendía que el plan de distribución era incorrecto, errado o fraudulento, tenía que emitir un voto en contra de la moción que proponía la aprobación de las alternativas propuestas por la Junta de Directores. La parte recurrida señaló que el recurrente no votó en contra del acuerdo adoptado. Así las cosas, alegó que, al no emitir un voto, el recurrente quedó a expensas de la decisión tomada por los demás condóminos y por ello DACO carecía de jurisdicción para atender el asunto.

**III.**

**A.**

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq.* (LPAU), establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. A tenor de esta y la jurisprudencia aplicable, la revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia se dio dentro de las facultades que le fueron conferidas por ley, si es compatible con la política pública que la origina y si es legal y razonable. ***Capó Cruz v. Jta de Planificación et al.,*** 204 DPR 581, 590-591 (2020); ***Rolón Martínez v. Supte. Policía,*** 201 DPR 26, 35 (2018). Es decir, que este tipo de revisión busca limitar la discreción

de las agencias y garantizar que estas desempeñen sus funciones de acuerdo con los confines de la ley. *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 891-892 (2008). De la mano con esto, es norma reiterada de derecho que los foros revisores le concederán gran deferencia y consideración a las decisiones de las agencias administrativas, debido a la vasta experiencia y el conocimiento especializado sobre los asuntos que le fueron delegados. *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía,* supra. Conforme a ello, los tribunales deben ser cautelosos al intervenir con las decisiones de los organismos administrativos. *García Reyes v. Cruz Auto Corp.,* supra, pág. 892; *Metropolitana, S.E. v. A.R.Pe.,* 138 DPR 200, 213 (1995); *Gallardo v. Clavell,* 131 DPR 275, 289–290 (1992).

Por las razones antes aludidas, las decisiones de las agencias administrativas gozan de una presunción de regularidad y corrección. *Capó Cruz v. Jta de Planificación et al.,* supra, pág. 591; *Rolón Martínez v. Supte. Policía,* supra; *García Reyes v. Cruz Auto Corp.,* supra. La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. *Misión Ind. P.R. v. J.P.,* 146 DPR 64, 130 (1998).

Así, al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo v. Yiyi Motors,* 161 DPR 69, 76 (2004). Cónsono con ello, será necesario determinar si la agencia actuó de forma arbitraria, ilegal o de manera tan irrazonable que su actuación constituyó un abuso de discreción. *Rolón Martínez v. Supte Policía,* supra; *Rebollo v. Yiyi Motors,* supra.

Según ha quedado establecido como norma general, el ejercicio de revisión judicial de una decisión administrativa se limita

a tres asuntos: (1) la concesión del remedio apropiado; (2) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial que obra en el expediente administrativo; y (3) la revisión completa y absoluta de las conclusiones de derecho. ***Capó Cruz v. Jta de Planificación et al.,*** supra; ***Asoc. Fcias. v. Caribe Specialty et al. II,*** 179 DPR 923, 940 (2010); ***García Reyes v. Cruz Auto Corp.,*** supra, pág. 894.

De esta forma, en el contexto de las <u>determinaciones de hechos</u> realizadas por las agencias administrativas, nuestro más alto foro ha pautado que los tribunales no deben intervenir o alterar las determinaciones de hechos de un foro administrativo si estas se sostienen por evidencia sustancial que obra en el expediente administrativo, considerado en su totalidad. (Citas omitidas). ***Otero Mercado v. Toyota,*** 163 DPR 716, 727-728 (2005); ***Domínguez v. Caguas Expressway Motors, Inc.,*** 148 DPR 387, 397 (1999). Dentro de este marco, evidencia sustancial se entiende como "aquella evidencia pertinente que una mente razonable pueda aceptar como adecuada para sostener una conclusión". (Citas omitidas). ***Ramírez v. Depto. de Salud,*** 147 DPR 901, 905 (1999). Por ello, la parte que alegue que alegue ausencia de evidencia sustancial debe demostrar que existe:

> "[O]tra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial [...] hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba" que tuvo ante su consideración. ***Metropolitana S.E. v. A.R.Pe.,*** supra, citando a ***Hilton Hotels International, Inc. v. Junta de Salario Mínimo,*** 74 DPR 670, 686 (1983).

En otras palabras, la parte recurrente tiene la obligación de derrotar la presunción de corrección de los procesos y de las decisiones administrativas. ***Fac. C. Soc. Aplicadas, Inc. v. C.E.S.,*** 133 DPR 521, 532 (1993). Si no demuestra que existe esa otra prueba, las determinaciones de hechos del organismo administrativo deben ser

sostenidas por el tribunal revisor. ***Ramírez v. Depto. de Salud,*** supra.

Ahora bien, cuando se trate de <u>conclusiones de derecho</u> que no envuelvan interpretaciones dentro del área de especialización de la agencia, éstas se revisarán por los tribunales sin circunscribirse al razonamiento que haya hecho la agencia. ***Capó Cruz v. Jta de Planificación et al.,*** supra; ***Pacheco v. Estancias,*** 160 DPR 409, 432 (2003); ***Rivera v. A & C Development Corp.,*** 144 DPR 450, 461 (1997). Cuando las determinaciones de las agencias estén entremezcladas con conclusiones de derecho, el tribunal tendrá amplia facultad para revisarlas, como si fuesen una cuestión de derecho propiamente. ***Pacheco v. Estancias,*** supra, pág. 433; ***Rivera v. A & C Development Corp.,*** supra. En nuestro ordenamiento jurídico, es norma reiterada que, en el proceso de revisión judicial, los tribunales tienen la facultad de revocar al foro administrativo en materias jurídicas. Véase, además, la Sec. 4.5 de la LPAU, *supra* sec. 9675.

Es pertinente señalar que nuestro sistema de adjudicación administrativo busca "alentar la solución informal de las controversias", según establece la Sec. 1.2 de la LPAU, *supra* sec. 9602. Para ello, la LPAU permite que las agencias establezcan las reglas y procedimientos que regirán ante sí para la solución rápida e informal de las controversias; siempre salvaguardando los derechos garantizados por ley. Íd. Por lo cual, las agencias no quedan sometidas a un procedimiento rígido que obstaculiza la producción de una solución rápida, justa y económica. Íd.

En suma, la referida deferencia debe ceder cuando se demuestre que: (1) la decisión no está basada en evidencia sustancial; (2) la agencia ha errado en la aplicación de la ley; (3) la actuación de la agencia resulta ser arbitraria, irrazonable o ilegal; y (4) la actuación administrativa lesiona derechos constitucionales

fundamentales. (Citas omitidas). ***The Sembler Co. v. Mun. de Carolina,*** 185 DPR 800, 822 (2012).

**B.**

La *Ley Orgánica del Departamento de Asuntos del Consumidor*, Ley Núm. 5 del 23 de abril de 1973 (Ley Núm. 5-1973), según enmendada, 3 LPRA sec. 341 *et seq.*, creó el DACO con el propósito de "ventilar y adjudicar las querellas traídas por los consumidores, fiscalizar el cumplimiento de las leyes cuyo objetivo es proteger al consumidor, educar al consumidor y ponerle al consumidor representación adecuada en la defensa de todos sus derechos". Exposición de Motivos de la Ley Núm. 5-1973 (1973 LPR 5). De igual modo, la Asamblea Legislativa creó esta agencia administrativa para que fuese especializada y poder, entre otros asuntos, "vindicar los derechos del consumidor en una forma agresiva y firme". Íd.; Véase, además, Artículo 3 de la Ley Núm. 5-1973, *supra* sec. 341b; ***Rodríguez v. Guacoso Auto,*** 166 DPR 433, 438 (2005). Asimismo, las reglas del Reglamento de Procedimientos Adjudicativos, Reglamento Núm. 8034, DACO, 14 de junio de 2011 (Reglamento Núm. 8034), tienen como propósito "asegurar la solución justa, rápida y económica de las querellas presentadas ante o por el Departamento y proveer un procedimiento uniforme para su adjudicación". Regla 1, Reglamento Núm. 8034, *supra*, pág. 1. En lo pertinente, la Regla 11 de dicho reglamento dispone que no se celebrará una vista administrativa cuando, luego de evaluar la prueba y los planteamientos de las partes, no surgen controversias reales de hechos. Regla 11, Reglamento Núm. 8034, pág. 12.

**C.**

La Ley Núm. 129-2020, *supra*, se aprobó con el propósito de actualizar las normas que rigen la convivencia en los condominios. Exposición de Motivos de la Ley Núm. 129-2020 (2020 LPR 129). Según establece el estatuto, el Consejo de Titulares es la autoridad

suprema respecto a la administración del inmueble sometido al Régimen de Propiedad Horizontal, y está integrado por todos los titulares. Artículo 48 de la Ley Núm. 129-2020, *supra* sec. 1922t. Le corresponde a dicho cuerpo elegir, mediante el voto afirmativo de la mayoría, las personas que ocuparán la Junta de Directores. Artículo 49 de la Ley Núm. 129-2020, *supra* sec. 1922u. Entre los deberes y funciones que posee la Junta de Directores están "[a]tender todo lo relacionado con el buen gobierno, administración, vigilancia y funcionamiento del régimen y en especial lo relativo a las cosas y elementos de uso común y los servicios generales, y hacer a estos efectos las oportunas advertencias y apercibimientos a los titulares"; "[c]obrar a los titulares las cantidades con que deben contribuir a los gastos comunes y realizar los demás cobros y pagos que sean necesarios, extendiendo los correspondientes recibos y cheques"; "[c]umplir y hacer cumplir las disposiciones de esta Ley, del reglamento, de la escritura matriz y de los acuerdos del Consejo de Titulares"; "[e]stablecer un plan de pago para aquellos titulares que demuestren no tener la capacidad económica para cumplir con los plazos de cuotas, cuotas especiales, derramas, y/o multas con pago vencido de sesenta (60) días o más"; y "[e]stablecer los controles y procedimientos adecuados para salvaguardar los activos del Consejo de Titulares y cumplir con todas las obligaciones y regulaciones requeridas". Artículo 53 (a), (d), (i), (l) y (m) de la Ley Núm. 129-2020, *supra* sec. 1922y.

En particular, el(la) Director(a) o el(la) Presidente(a) de la Junta de Directores puede emitir convocatorias para celebrar asambleas. Dichas convocatorias deberán estar firmadas por la persona o las personas que las convoquen, e incluir los asuntos a tratar, la hora, el día y el lugar de la reunión. Artículo 50 de la Ley Núm. 129-2020, *supra* sec. 1922v. En las asambleas, cada titular tiene derecho a un voto independientemente del número de

apartamentos del cual sea propietario "y/o derecho al voto con arreglo al porcentaje correspondiente a su apartamento para efectos del cómputo de mayoría de porcentajes, dependiendo de la definición del concepto de mayoría que rija para el inmueble". Artículo 51 de la Ley Núm. 129-2020, *supra* sec. 1922w.

Para los casos de siniestro, el Artículo 63 de la Ley Núm. 129-2020, *supra*, en lo pertinente establece lo siguiente:

> [L]uego de recibir del asegurador una oferta de indemnización ya sea total o parcial, la Junta de Directores preparará un plan de distribución de los fondos para la reconstrucción, detallando las cantidades específicas que habrán de destinarse a la reconstrucción de las áreas comunes y los apartamentos, conforme a las tasaciones realizadas, cotizaciones obtenidas y los deducibles aplicables y a las restantes áreas comunes del inmueble. El informe se circulará a los titulares con no menos de quince (15) días de antelación a la celebración de la asamblea extraordinaria donde se consideren las ofertas presentadas y el referido informe. El Consejo de Titulares decidirá finalmente, por voto mayoritario, todo lo relacionado a la indemnización, incluidas la aceptación de las sumas ofrecidas por las compañías aseguradoras y las prioridades de las obras a realizarse.

Por otra parte, el Art. 65 de la Ley Núm. 129-2020, *supra* sec. 1923j, establece las instancias en las que un titular podrá impugnar las acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador o los acuerdos del Consejo de Titulares. La impugnación de las acciones u omisiones, así como acuerdos se permite bajo los siguientes supuestos: (1) cuando sean contrarios a la Ley Núm. 129-2020, *supra*, la escritura matriz y el reglamento del condominio; (2) resulten gravemente perjudiciales a los intereses de la comunidad o a un titular; o (3) resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo o no haya sido previsible al momento de la compra. Íd. Ahora bien, cuando se trate de impugnación de acuerdos del Consejo de Titulares, el titular tendrá que acreditar que **estuvo presente** o representado en la asamblea en que se tomó el acuerdo que impugna y que **votó en contra del acuerdo**. Íd.

Cuando los titulares son dueños de los apartamentos en condominios con por lo menos un apartamento de uso residencial, "la jurisdicción será primaria y exclusiva del Departamento de Asuntos del Consumidor, así como cualquier reclamación presentada en contra del agente administrador". Íd.; véase, además, Artículo 66 de la Ley Núm. 129-2020, *supra*, sec. 1923k.

**IV.**

En el caso de marras nos corresponde resolver si DACO actuó correctamente al desestimar la *Querella enmendada* incoada por el recurrente bajo el fundamento de falta de jurisdicción.

El recurrente adujo que DACO incidió al concluir que está impugnando una decisión mayoritaria del Consejo de Titulares tomada en la asamblea extraordinaria celebrada el 19 de julio de 2024 porque, según alegó, lo que está impugnando es la distribución de los fondos hecha por la Junta de Directores. Reconoció que asistió a la referida asamblea extraordinaria, pero no votó. No obstante, arguyó que no está violando el Artículo 65 de la Ley Núm. 129-2020, *supra,* porque la forma en que la Junta de Directores hizo la distribución de fondos es fraudulenta.

En desacuerdo, la parte recurrida arguyó que para que DACO declarara nula la asamblea extraordinaria celebrada el 19 de julio de 2024 el recurrente tenía que asistir a dicha asamblea y haber votado en contra de los acuerdos adoptados. Adujo que como el recurrente no emitió un voto, quedó a expensas de la decisión tomada por los demás condóminos. Por ello, arguyó que DACO carecía de jurisdicción para atender el reclamo.

Tras un análisis objetivo, sereno y cuidadoso del expediente, en correcta práctica adjudicativa apelativa, resolvemos que DACO no cometió el error señalado, por lo que corresponde confirmar la *Resolución sumaria* recurrida.

Según pormenorizamos, el recurrente instó una *Querella enmendada* ante DACO solicitando que se declarare nula la asamblea extraordinaria celebrada el 19 de julio de 2024 y los acuerdos adoptados en esa fecha. Según alegó, las alternativas presentadas para decidir el plan de distribución de fondos no se ajustaban en derecho dado a que no se utilizó la valoración de los daños hecha por el perito contratado por el condominio.

De un análisis del expediente ante nuestra consideración se desprende que el único asunto para atenderse en la asamblea extraordinaria del 19 de julio de 2024 era la aprobación del Plan de Distribución de los fondos pagados por la indemnización por los daños ocasionados tras el paso del huracán María.[11] La asamblea se llevó a cabo y, por voto de la mayoría, eligieron una de las alternativas y se aprobó el mismo. El foro recurrido resolvió que no tenía jurisdicción para atender la *Querella enmendada* porque el señor Ponce Fantauzzi no votó en contra de la decisión tomada por la mayoría de los presentes en la referida asamblea extraordinaria.

Conforme al Artículo 65 de la Ley Núm. 129-2020, *supra,* cuando un titular pretenda impugnar un acuerdo del Consejo de Titulares, tendrá que acreditar dos cosas: (1) que **estuvo presente o representado en la asamblea** en que se tomó el acuerdo que impugna, y (2) que **votó en contra de este**. En el caso de marras, el recurrente asistió a dicha asamblea, pero no votó, ni a favor ni en contra. Este mismo lo reconoció en sus escritos y es un hecho determinado por el foro recurrido. Ello es razón suficiente en derecho para denegar el reclamo solicitado por el recurrente ante DACO.

Es norma reiterada que, en el ámbito administrativo, al igual que en el foro judicial, no existe discreción para asumir jurisdicción

---

[11] Íd., Exhibit 12, pág. 4, líneas 3-6.

donde no la hay. ***Raimundi v. Productora***, 162 DPR 215, 224 (2004). Las agencias administrativas solamente pueden ejercer los poderes que su ley habilitadora expresamente les ha otorgado y los que sean indispensables para llevar a cabo su encomienda primordial. ***Departo. Justicia v. Jiménez***, 199 DPR 293, 309 (2017); ***Pérez López y Otros v. CFSE***, 189 DPR 877, 883 (2013).

A tenor con la normativa jurídica aplicable, solo en estamos autorizados a intervenir en las determinaciones de las agencias en las siguientes circunstancias: 1) cuando no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley, y (3) cuando ha mediado una actuación irrazonable o ilegal. En el caso de marras no se da ninguna de tales circunstancias.

En virtud de todo lo anterior, procede confirmar la *Resolución sumaria* emitida por DACO, toda vez que el recurrente incumplió con el Artículo 65 de la Ley Núm. 129-2020, *supra*, y por tanto el foro recurrido carece de jurisdicción.

**V.**

Por los fundamentos que anteceden, se confirma la *Resolución sumaria* recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones